PHILLIPS (WILCOCKS v.). See Case No. 17,639.

PHILLIPS (WILLETT v.). See Case No. 17,683.

## Case No. 11,109.

PHILLIPS v. WILSON.

[1 Wash. C. C. 470.] [1]

Circuit Court, D. Pennsylvania. Oct. Term, 1806.

EJECTMENT—TITLE UNDER LAND WARRANT—SURVEY—LINES.

1. If the warrant for lands be uncertain, or if it be certain, and is laid in another place, and before the survey is made, no third person has acquired a title to the land on which the warrant is laid; every objection to a title so derived is done away.

2. The survey gives notice to all subsequent purchasers, and it is only such who can complain. Such a survey could not affect the title of a person, who in the meantime had acquired an incipient title to the land, either by warrant or settlement.

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the supreme court of the United States, under the supervision of Richard Peters, Jr., Esq.]

3. If the surveyor has warrants to the amount of the lands surveyed, and he includes the whole in one survey, marking the boundaries of the different surveys, it is nothing to third persons how the warrants are appropriated, before the map of the survey is returned to the surveyor general.

4. Quere.—What would be the effect of a settlement upon the title to lands comprehended in another and adjoining survey, where the lines of the land claimed by the settlement, had not been run out, so as to take part of the lands so adjoining the settlement?

This ejectment is to recover 400 acres of land, lying north and west of the Ohio, Allegheny and Conewango. The plaintiff's title was founded on an application for this land, on the 25th of April, 1793, by one Megee (in the name of R. Thompson), who sold to Wells and Morris; a warrant in the name of Richard Wells, for 400 acres, lying between Big and Little Beaver creeks, to include his improvement; and a survey dated in March, 1795. The purchase money was paid the 12th June, 1794, and the warrant was entered, with the deputy surveyor of the district, in August, 1794. In 1800, a small additional sum was paid. In May, 1795, a connected plat of this, together with a number of other adjoining tracts, surveyed at the same time, on other warrants, for Wells and Morris and the Population Company, was returned by the surveyor, according to law, to the surveyor general's office. It appeared in evidence, that at the time when these several warrants, all for 400 acres each, were surveyed, the deputy did not appropriate the several tracts to the respective warrants; but after surveying and plotting them in a general map, the surveyor general made the appropriation, and allotted the warrant of Richard Wells to the land in question, which was proved to be in possession of the defendant. It was proven, that Megee had made improvements at a considerable distance from the land in dispute; but that none were made on this land, either by him or Wells, at the time the warrant issued, or for a long time afterwards. The plaintiff [lessee of Phillips] deduced a title regularly derived from Wells. It appeared in evidence, that according to common usage in this state, and the practice of the land office, the name of the person appearing on the list of applications, is always considered at the land office, as merely nominal, and is struck out at the instance of the real applicant, whenever he sells to a third person; and the name of such third person is inserted in his stead. This was done in the present instance. That it is also the general and uniform custom, that when the purchase money is paid, the warrant issues, and bears date as of the day of the application. The danger of making settlements on this part of the country, from 1793 to 1796, was admitted by the defendant's counsel, as proved in the cases of Huidekoper v. Burrus [Case No. 6,848]; evidence was also given by the plaintiff, that during that period, there were no settlements in this country, except

in the neighbourhood of forts; and that no prudent man would have attempted it.

The defendant claimed by virtue of a settlement right in one Guy. from whom he deduced a title; and he relied upon a number of depositions to prove, that in 1793, 1794, 1795, and 1796, he was seen upon the land, or about thirty or forty rods from it, on a tract claimed by, and surveyed for the Population Company (for on this point there was some contrariety in the evidence, the weight of it being in favour of his improvement being on the adjoining tract); that he raised and covered in a cabin, girdled trees, had his bed clothes there, &c. Some of the witnesses stated, that he resided there, and seemed to be keeping possession. It was proved, however, by other witnesses, that he lived with his family on the south side of the Ohio, during all this time, where he built a mill. No satisfactory evidence was given of any thing like a permanent settlement, until 1796, if so soon. The objections to the plaintiff's title were: 1st. That the purchase money not having been fully paid up, till 1800, the warrant could not legally issue till then, and of course the survey was unauthorized. But if the subsequent payment could legalize it, it could only do so from the time the money was paid; before which, it is admitted, an actual settlement had been made by the defendant. The 3d section of the act of 3d April, 1792. declares, that the warrant may be granted to the applicant, he paying the purchase money and fees of office, which implies a condition; besides which, the 10th section declares that no warrant shall issue till the purchase money is paid. 2d. That the warrant is too uncertain; or, if not so, that, by calling for Megee's improvement, it called for a tract far removed from the one in dispute; and, therefore, could not be surveyed on the land in controversy: and, further, that the tract should, on the survey, have been appropriated to the warrant, and not left to the chamber operation of the surveyor. 3d. That improvement rights, though unaccompanied with actual settlement, are protected against warrants, in which the land is not particularly described, by the act of the 22d April, 1794 [3 Smith's Laws, 70]. It was contended, that it appeared upon the evidence, that Guy had made an actual settlement, within the meaning of the act of 1792, before this land was surveyed; that all objection to Guy's not having surveyed his settlement right, was answered by the evidence, which proved, that, at the time the surveyor was surveying the warrants of Wells and Morris, Guy applied to him to survey his settlement right, and that he refused to do it. For the plaintiff, it was contended: First, that not even an improvement of any sort was made by Guy on this land, till 1796, but, on an adjoining tract; and that after the survey for Wells, he could not extend his right. even if it had been accompanied with an actual settlement upon this

land. Secondly, it is plain, from the evidence, that an actual settlement, within the principles laid down in the case of Balfour's Lessee v. Mead [Case No. 808], was not made. either upon this or the adjoining tract, till long after the survey of the warrant, and the return of the connected plat of the lands, surveyed in March, 1795.

Ingersoll & Tilghman, for plaintiff.
Levy & Rodney, for defendant.

WASHINGTON, Circuit Justice. The first objection to the plaintiff's title, is, that the warrant issued before the payment of the purchase money. Without giving any opinion how the law would be, if such were the case, it is sufficient to state, that though the warrant bears date when the application was filed, agreeable to the uniform custom of the land office, in fact it issued on the day when the purchase money was paid; and the small sum paid in 1800, was only the interest which accrued between the date of application and the issuing of the warrant; and, consequently, the case does not come within the provisions of either of the sections of the act of 1792, which were relied upon.

2d. The uncertainty, the mislocation, and the improper appropriation of the tract to the warrant, are objected. All of these may be considered at once, for all have been determined in the case of Huidekoper v. Burrus [Case No. 6,848]. If the warrant be uncertain; or, if it be certain, and is laid in another place, and before the survey is made, no third person has acquired a title to the land on which the warrant is laid; every objection is done away. The survey gives notice to all subsequent purchasers, and it is such only who can complain. As to the state, it is perfectly immaterial where the warrant is surveyed; but, such survey could not oust out a person, who, in the meantime. had acquired an incipient title to the land surveyed, either by warrant or settlement. As to the not surveying each separate warrant on the land to which it is to attach, at the time of the survey, if the surveyor has warrants to the amount of the land surveyed, and he comprehends the whole in one inclusive survey, marking the boundaries of the different surveys; it is nothing to third persons, how the owner of the several warrants may appropriate, on the connected map, each warrant to its respective tract, before the map is returned to the surveyor general. Whether these objections are to be considered as cured from the day of the survey, which, in this case, was in March, 1795. or on the day when the connected plat was returned, two months after, it is not, in this case, material to decide; because, if an actual settlement was not made, on or before the first period. it is not pretended that it was made between the first and the latter period. But we do not mean to intimate an opinion, that the latter is the true time.

3d. The only observation necessary to make upon this objection is, that the law of April, 1794, does not apply to this case. This law applies to cases where the purchase money was not paid before the 15th of June, 1794; and the indescriptive warrants. which it is said shall not, by virtue of this act, affect the title of those who have made improvements, are such warrants as are permitted to be surveyed under this act. The warrant in question is not of this description, because it was paid for on the 12th of June, 1794. The great question, then, depends upon the defendant's title; and it is to be considered, whether the defendant, or the person under whom he claims, made an actual settlement within the meaning of the act of April, 1792, or at any time before March or May, 1795. What constitutes such a settlement, is a point of law, and was fully laid down in the case of Balfour's Lessee v. Mead [supra], which has been read to the jury. Whether such a settlement was made, is a matter of fact for the jury to decide. To disprove such a settlement, the plaintiff relies upon the state of the country, which, from 1793 to 1796, forbade any person to make such a settlement, and the general evidence given, that no such settlements were made within that time. That Guy was a resident with his family, during that period, on the south of the Ohio, and that he only ventured out at times to the cabin he had raised, for temporary purposes to make sugar; or under a false, but common opinion, that improvements, without an intention to settle, would give a right.

The plaintiff's counsel have also insisted, that, even if an actual settlement was made, it was not on this land; and that, therefore, the defendant cannot now run into this land, which was surveyed in March, 1795. There is some contradiction in the evidence, as to this fact; but, if proved, as contended for by the plaintiff, it would become an important question, whether the settler can extend the limits of his 400 acre settlement right, into an adjoining survey, if he has failed to lay off his lands before such survey is made. Without deciding the point, it may be sufficient to observe, by the way, that, if he may do so, he has it in his power to make his settlement protect not merely 400 acres, but three or four times as much, from appropriation; by extending his limits north, south, west, or east, as his fancy or caprice may lead him; and thus either prevent others from surveying in his neighbourhood, or afterwards disturb their possessions. This would seem a very unreasonable thing; but this case seems to keep clear of this objection, as he applied to the surveyor to mark the bounds of his settlement right, at the time he was surveying these warrants. I know not what more he could do; and, I am inclined to think, it would be unreasonable to make him suffer, because the surveyor refused to comply with the request, provided he was such a settler, as was entitled to call upon the surveyor to perform this duty; for, if he was not, then there was an end of the controversy: and this brings us to the important part of the cause. Was he such a settler, in March, 1795? If, upon the evidence, you are of opinion he was not, then your verdict must be for the plaintiff; if he was, then it must be for the defendant.

The jury found for the plaintiff.